## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **Ernesto Palomares**, | |
| Plaintiff, | |
| v. | Cause No. 1:21-cv-2933 |
| **BOB EVANS RESTAURANTS, LLC**, and **Pamela Dunlap**, | |
| Defendants. | |

## COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL

Mr. Palomares is suing BOB EVANS and Pamela Dunlap for sexual orientation and race discrimination, and retaliation, in violation of TITLE VII of the CIVIL RIGHTS ACT OF 1964 and SECTION 1981 of the CIVIL RIGHTS ACT OF 1866, and for failure to pay minimum wage and retaliation in violation of the FAIR LABOR STANDARDS ACT. This lawsuit is filed in the Southern District of Indiana because the claims arise under federal law, and the violations occurred within the District. Mr. Palomares seeks all available relief and respectfully requests a trial by jury.

Respectfully submitted,

Benjamin C. Ellis
HKM EMPLOYMENT ATTORNEYS LLP
320 N. Meridian St., Ste. 615
Indianapolis, IN 46204
P/F   |   (317) 824-9747
Email   |   bellis@hkm.com

## 1.  INTRODUCTION

Mr. Palomares is a gay Latino with an unconventional gender presentation, including that he often wears makeup and carries a purse. After successfully working for BOB EVANS at its Plainfield, Avon, and Fishers restaurants, General Manager Pamela Dunlap discriminated against him on the basis of sex and race at its High School Road location, failed to pay him minimum wage, and then fired him when he complained.

Dunlap gave Mr. Palomares unfavorable shift assignments as compared with white and straight employees, often leaving him to work busy shifts alone. Dunlap refused to give Mr. Palomares a secure location to store his purse, and she routinely subjected him to microaggressions to show her disapproval of his identity and to make him feel unwelcome. Dunlap also caused BOB EVANS to take a tip credit against Mr. Palomares' wages even while he was working non-tipped duties.

When Mr. Palomares complained directly to Dunlap about this mistreatment, she caused him to be fired the very next day. BOB EVANS then falsely claimed the termination was based on Mr. Palomares's romantic relationship with Assistant Manager Arturo Paredes – a fact known to the company since he was first hired.

Mr. Palomares now seeks all available relief for BOB EVANS's and Dunlap's violations of TITLE VII, SECTION 1981, and the FLSA.

## 2. JURISDICTION & VENUE

1. This Court has original jurisdiction, under 28 U.S.C. § 1331, of Mr. Palomares's claims for violations of TITLE VII, SECTION 1981, and the FLSA because those claims arise under the laws of the United States.

2. This Court is a proper venue for this lawsuit, under 28 U.S.C. § 1391(b)(2), because the violations of TITLE VII, SECTION 1981, and the FLSA occurred within the District.

## 3. PARTIES

### 3.1. Plaintiff

3. Plaintiff Ernesto Palomares resides in Marion County, Indiana.

### 3.2. Defendant

4. Defendant BOB EVANS RESTAURANTS, LLC was, at all relevant times, a Delaware limited liability company (Business ID No. 201702221182466) doing business in Marion County, Indiana.

5. Defendant Pamela Dunlap resides in Marion County, Indiana.

## 4. STATEMENT OF FACTS

6. Mr. Palomares was hired by Kristy White (Director) to work for BOB EVANS in or about September 2019 as a server.

7. During his employment, Mr. Palomares held various positions, including server, host, dishwasher, and kitchen prep at four locations: Plainfield, Avon, Fishers, and High School Road.

8.   Mr. Palomares was a conscientious, diligent employee who enjoyed his job and hoped to develop a career with Bob Evans.

9.   Upon my hire, Arturo Paredes (already an assistant general manager) disclosed to White that the two of us were engaged.

10.   BOB EVANS was always aware of this same-sex relationship between us because we disclosed it to the applicable directors and general managers as we moved together to different BOB EVANS restaurants.

11.   Until the termination of his employment on or about March 3, 2021, BOB EVANS knowingly permitted Paredes and Mr. Palomares to work together at each restaurant location listed above.

12.   In or about Summer 2020, Mr. Palomares was transferred from the Fishers location to the High School Road location, along with Paredes.

13.   As with each prior transfer, Mr. Palomares did so with full disclosure of my relationship to Pamela Dunlap (General Manager).

14.   Not only did Dunlap permit this arrangement, but she actively participated in a wedding party thrown for them by the High School Road staff at the restaurant location.

15.   When Mr. Palomares married Paredes on June 12, 2020, Dunlap, along with Lorraine Fuller (Assistant Manager), signed a card addressed to them. (Ex. 1.)

16.  Despite allowing them to work together, Dunlap created a hostile work environment for me based on Mr. Palomares's gender presentation.

17.  Unlike many men, Mr. Palomares routinely wears makeup and carries a purse.

18.  When I arrived for my shifts, Dunlap often looked directly at Mr. Palomares – scanning him from head to toe, with obvious discomfort and displeasure at his appearance – and smirked at him.

19.  By doing this, Dunlap made Mr. Palomares feel that his gender presentation was unwelcome.

20. Adding to his unease, Mr. Palomares felt he had no place to store my purse and would therefore set it on an unused table to keep it safe.

21. Although these tables were set aside due to COVID restrictions, Dunlap often moved Mr. Palomares's belongings without his permission.

22. This caused further distress for Mr. Palomares as he regularly had to ask to be respected; this was not something women with purses had to endure.

23.  Dunlap ultimately informed Mr. Palomares that his purse should be kept in the "breakroom," although that room was in regular use and was therefore unsecure and unsuitable for storing personal effects.

24.  Mr. Palomares demonstrated his reliability and affability with clientele and was scheduled as server four or five days per week.

25. Mr. Palomares became a regular on Wednesdays, working the closing shift.

26. During that shift, Mr. Palomares was routinely placed on the schedule with other servers or hosts who would call out of their scheduled shifts, or who would simply not show up at all (no-call, no-show).

27. These servers were all white and were never written up or reprimanded in any way for tardiness, call-outs, or no-call, no-showing for shifts.

28.   Because of this scheduling practice, Mr. Palomares was often the only front-of-house employee besides management.

29. Mr. Palomares was called upon to host, seat guests, provide menus and silverware, roll silverware, perform carryout host duties, answer the telephone, serve guests, bus tables, and perform COVID sanitation protocols.

30. Mr. Palomares performed these duties while clocked in as server, making only $2.13 per hour (though hosts were started at $10 per hour).

31. On the rare occasions Mr. Palomares received tips while performing host duties, his tips were claimed by Dunlap and distributed at her discretion.

32. Mr. Palomares spent more than 20% of his time performing duties for which he did not receive tips.

33. Mr. Palomares complained to Dunlap on February 24, 2021, about BOB EVANS's about these scheduling and pay issues.

34. On or about March 3, 2021, Mr. Palomares worked his scheduled shift.

35. At approximately 3:30 p.m., Dunlap, who was not scheduled to work, arrived at the restaurant, handed a note to Lorraine Fuller, and quickly left; she did not acknowledge Mr. Palomares in any way.

36. After Dunlap exited the store, Fuller pulled Mr. Palomares aside and told him that his employment was being terminated and that he "knew this day was going to come."

37. Fuller informed Mr. Palomares his employment was being terminated due to his personal relationship with Paredes.

38. Mr. Palomares was not offered a transfer to another location.

39. Mr. Palomares was also never previously told he was not permitted to work with his husband.

40. At the time Mr. Palomares was terminated, white, hetero-sexual employees in romantic relationships were being permitted to work together at the High School Road restaurant.

41. Following the termination of my employment, Dunlap stopped scheduling unreliable employees on Wednesdays.

42. Mr. Palomares has personally observed five servers working at the same time during his former Wednesday shift, on multiple occasions.

## 5.   STATEMENT OF CLAIMS

### 5.1.  Sex discrimination in violation of Title VII
### (Bob Evans only)

43. Mr. Palomares is a gay man with an unconventional gender presentation.

44. Mr. Palomares was subject to adverse employment actions by BOB EVANS, including:

   a.   The creation of a hostile work environment by Pamela Dunlap;

   b.   Unfavorable work assignments; and

   c.   Denial of a secure location to store personal effects.

45. Mr. Palomares's sex, sexual orientation, or gender identity was at least part of BOB EVANS's motive for these adverse employment actions.

46. Mr. Palomares's was harmed by BOB EVANS's sex discrimination.

### 5.2.  Race discrimination in violation of Title VII
### (Bob Evans only)

47. Mr. Palomares is a Latino.

48. Mr. Palomares was subject to adverse employment actions by BOB EVANS, including:

   a.   The creation of a hostile work environment by Pamela Dunlap;

    b.   Unfavorable work assignments; and

    c.   Denial of a secure location to store personal effects.

49. Mr. Palomares's race (Latino) was at least part of BOB EVANS's motive for these adverse employment actions.

50. Mr. Palomares's was harmed by BOB EVANS's race discrimination.

## 5.3. Race Discrimination in violation of Section 1981 (Bob Evans and Dunlap)

51. Mr. Palomares is a Latino.

52. Mr. Palomares was subject to adverse employment actions by BOB EVANS and Pamela Dunlap, including:

    a.   The creation of a hostile work environment by Dunlap;

    b.   Unfavorable work assignments; and

    c.   Denial of a secure location to store personal effects.

53. Mr. Palomares's race (Latino) was at least part of BOB EVANS's and Dunlap's motive for these adverse employment actions.

54. Mr. Palomares's was harmed by BOB EVANS's and Dunlap's race discrimination.

## 5.4. Retaliation in violation of Title VII (Bob Evans only)

55. On February 24, 2021, Mr. Palomares complained that BOB EVANS was treating him differently on account of his sex or race (Latino).

56. On March 3, 2021, BOB EVANS terminated Mr. Palomares in retaliation for his complaint his sex- or race-based treatment.

### 5.5.  Retaliation in violation of Section 1981 (Bob Evans and Dunlap)

57.  On February 24, 2021, Mr. Palomares complained that BOB EVANS and Dunlap were treating him differently on account of his race (Latino).

58.  On March 3, 2021, BOB EVANS and Dunlap terminated Mr. Palomares in retaliation for his complaint his sex- or race-based treatment.

### 5.6.  Failure to pay minimum wage in violation of the Fair Labor Standards Act (Bob Evans and Dunlap)

59.  Mr. Palomares's work for BOB EVANS was engaged in commerce;

60.  BOB EVANS's business employed at least two persons, was engaged in commerce, and had annual gross sales of at least $500,000; and

61.  BOB EVANS failed to pay Mr. Palomares minimum wage as required by law.

62.  Dunlap was personally responsible for the denial of his minimum wage.

63.  Specifically, Mr. Palomares spent more than 20% of his working time performing non-tipped duties, and BOB EVANS took a tip credit while he was performing non-tipped duties.

### 5.7. Retaliation in violation of the FLSA (Bob Evans and Dunlap)

64. On February 24, 2021, Mr. Palomares complained that BOB EVANS was taking a tip-credit for time he spent doing non-tipped work.

65. On March 3, 2021, BOB EVANS terminated Mr. Palomares in retaliation for his complaint about the tip-credit.

66. Dunlap was personally responsible for the termination of Mr. Palomares's employment.

## 6. PRAYER FOR RELIEF

Mr. Palomares respectfully requests that judgment be entered in his favor, and against BOB EVANS and Pamela Dunlap on all claims, for their violations TITLE VII of the CIVIL RIGHTS ACT OF 1964, SECTION 1981 of the CIVIL RIGHTS ACT OF 1866, and the FAIR LABOR STANDARDS ACT. He requests all available relief on his claims, including the following:

a. Back pay;

b. Reinstatement or front pay;

c. Compensatory and punitive damages;

d. Liquidated damages;

e. Attorney fees and costs; and

f. Prejudgment and postjudgment interest.

## 7. JURY DEMAND

As required by Fed. R. Civ. P. 38(b), Mr. Palomares respectfully requests a trial by jury on all issues so triable.